**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Kristin Renee Ruhlman |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Middle District of Pennsylvania |
| Case number | 2200208 |

Official Form 410S1

# Notice of Mortgage Payment Change    12/15

**If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due.** See Bankruptcy Rule 3002.1.

**Name of creditor:** Wells Fargo Bank, N.A.

**Court claim no.** (if known): 4-2

**Date of payment change:**
Must be at least 21 days after date of this notice: 02/01/2023

**New total payment:**
Principal, interest, and escrow, if any: $1205.31

**Last 4 digits** of any number you use to identify the debtor's account: 7 8 0 5

## Part 1: Escrow Account Payment Adjustment

1. **Will there be a change in the debtor's escrow account payment?**

   ☒ No
   ☐ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why:

   **Current escrow payment:** $ _____    **New escrow payment:** $ _____

## Part 2: Mortgage Payment Adjustment

2. **Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?**

   ☒ No
   ☐ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why:

   **Current interest rate:** _____%    **New interest rate:** _____%

   **Current principal and interest payment:** $ _____    **New principal and interest payment:** $ _____

## Part 3: Other Payment Change

3. **Will there be a change in the debtor's mortgage payment for a reason not listed above?**

   ☐ No
   ☒ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement.
   (*Court approval may be required before the payment change can take effect.*)

   Reason for change:
   Payment change resulting from a completed modification agreement.

   **Current mortgage payment:** $ 1141.93    **New mortgage payment:** $ 1205.31

Official Form 410S1    **Notice of Mortgage Payment Change**    page 1

| Debtor 1 | Kristin Renee Ruhlman | Case number (if known) | 2200208 |
|---|---|---|---|
| | First Name   Middle Name   Last Name | | |

## Part 4: Sign Here

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☒ I am the creditor.

☐ I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

✗ Signature: /s/Maranda Henderson Braswell          Date: 04/10/2023

Print: Braswell, Maranda Henderson
First Name   Middle Name   Last Name

Title: VP Loan Documentation

Company: Wells Fargo Bank, N.A.

Address: MAC N9286-01Y
Number   Street
P.O. Box 1629
Address 2
Minneapolis          MN          55440-9790
City                 State        ZIP Code

Contact phone: 800-274-7025

Email: NoticeOfPaymentChangeInquiries@wellsfargo.com

# UNITED STATES BANKRUPTCY COURT

Middle District of Pennsylvania

Chapter 13 No. 2200208
Judge: Henry W. Van Eck

In re:
Kristin Renee Ruhlman

Debtor(s).

## CERTIFICATE OF SERVICE

I hereby certify that this Notice, including all attachments, is being served on or before April 11, 2023 via filing with the US Bankruptcy Court's CM ECF system or by mailing or providing a copy of this document to a vendor for mailing: By U.S. Postal Service First Class Main Postage Prepaid or FedEx.

Debtor:  By U.S. Postal Service First Class Mail Postage Prepaid or FedEx

Kristin Renee Ruhlman
1322 Bannister Street

York PA 17404


By U.S. Postal Service First Class Mail Postage Prepaid or FedEx

N/A


Debtor's Attorney:  By Court's CM/ECF system registered email address

Brent Diefenderfer
CGA Law Firm
135 North George Street

York PA 17401


By Court's CM/ECF system registered email address

N/A


Trustee:  By Court's CM/ECF system registered email address

Jack N Zaharopoulos
Standing Chapter 13 (Trustee)
8125 Adams Drive, Suite A

Hummelstown PA 17036

/s/Maranda Henderson Braswell

VP Loan Documentation

This Document Prepared By:
UMAR JALALUDDIN MOHAMMAD
WELLS FARGO BANK, N.A.
1 HOME CAMPUS
DES MOINES, IA 50328
(800) 416-1472

When Recorded Mail To:
FIRST AMERICAN TITLE
DTO REC., MAIL CODE: 4002
4795 REGENT BLVD
IRVING, TX 75063

Tax/Parcel #: 51-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.00-00000

_____ [Space Above This Line for Recording Data] _____

| | |
|---|---|
| Original Principal Amount: $140,409.00 | Investor Loan No.: ▮▮▮▮ |
| Unpaid Principal Amount: $137,611.86 | Loan No: (scan barcode) |
| New Principal Amount: $143,930.09 | |
| Total Cap Amount: $6,318.23 | |

Property Address: **1322 BANNISTER STREET, YORK, PENNSYLVANIA 17404**

## LOAN MODIFICATION AGREEMENT (MORTGAGE)

Executed on this day: **DECEMBER 20, 2022**

Wells Fargo Custom Loan Modification Agreement 10092022_448

Borrower ("I")[1]: **KRISTIN R. RUHLMAN**
Borrower Mailing Address: **1322 BANNISTER ST, YORK, PA 17404**
Lender or Servicer ("Lender"): **WELLS FARGO BANK, N.A.**
Lender or Servicer Address: **1 HOME CAMPUS, DES MOINES, IA 50328**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") **MAY 11, 2018** and the Note ("Note") date of **MAY 11, 2018 and Recorded on MAY 16, 2018 in INSTRUMENT NO. 2018020184 BOOK 2470 PAGE 2807, of the Official Records of YORK COUNTY, PENNSYLVANIA**

Property Address ("Property"): **1322 BANNISTER STREET, YORK, PENNSYLVANIA 17404**

Legal Description:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Wells Fargo Custom Loan Modification Agreement 10092022_448

Page 2

This Loan Modification Agreement ("Agreement") is made on **DECEMBER 20, 2022** by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property. Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

1. **Borrower Representations.**

    I certify, represent to Lender and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the terms of the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future; I did not intentionally or purposefully default on the terms of the Loan Documents in order to obtain a loan modification;

    B. I certify the Property is not condemned and is not vacant without the intent to re-occupy;

    C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents;

    D. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    E. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and,

    F. Borrower filed for relief under Chapter **13** of the United States Bankruptcy Code on **FEBRUARY 3, 2022**.

Wells Fargo Custom Loan Modification Agreement 10092022_448
Page 3

G. This Agreement is only valid once consent of the United States Bankruptcy Court or other applicable approval to modify this mortgage is received.

H. Notwithstanding anything to the contrary contained in this Agreement, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. Borrower and Lender agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

I. Borrower desires to retain the Property securing the Note, and acknowledges that Lender's security interest and lien are still valid and enforceable.

J. Borrower acknowledges and understands that he/she is not obligated to enter into this Agreement, and that he/she is entering into this Agreement at Borrower's request, voluntarily and with no coercion or pressure from Lender, for the sole purpose of retaining the Property.

2. **Acknowledgements and Preconditions to Modification.**

I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

C. If included, the undersigned borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.

3. **The Modification.**

If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **FEBRUARY 1, 2023** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make all required payments as a precondition to this modification under a workout plan or trial period plan if required, the Lender has the right to reject this Agreement even if I have signed and returned this Agreement. The first modified payment will be due on **FEBRUARY 1, 2023**.

- A. The new Maturity Date will be: **JANUARY 1, 2063**.

- B. The modified principal balance of the Note will include amounts and arrearages that will be past due as of the Modification Effective Date. This does not include unpaid late charges, valuation, property preservation and other charges not permitted under the terms of the Loan Modification Agreement. Permitted amounts and arrearages may include unpaid and deferred interest, fees, escrow advances and other costs less any amounts paid to the Lender but not previously credited to the Loan, collectively "Unpaid Amounts"; the portion of Unpaid Amounts capitalized is **$6,318.23**. The new principal balance of the Note will be **$143,930.09** (the "New Principal Balance") which includes the capitalized Unpaid Amounts. I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

- C. With the modification you will have a total partial claim due of **$34,545.00**, which includes **$0.00** that has been reduced from the Unpaid Principal Balance to reach the New Principal Balance above. This Agreement is conditional on the proper execution and recording of this HUD Partial Claim.

- D. Interest at the rate of **6.0000%** will begin to accrue on the Interest Bearing Principal Balance as of **JANUARY 1, 2023** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **FEBRUARY 1, 2023**. Interest due on each monthly payment will be calculated by multiplying the New Principal/Interest Bearing Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12). The payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 480 | 6.0000% | 01/01/2023 | $791.92 | $413.39 | $1,205.31 | 02/01/2023 |

**\*After the modification is complete, escrow payments adjust at least annually in accordance with applicable law therefore, the total monthly payment may change accordingly.**

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for the modified loan will be the minimum payment that will be due each month for the remaining term of the loan. The modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

E. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

F. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth.

4. **Additional Agreements.**

I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Mortgage Assistance that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of the Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund the escrow account.

E. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this section. I shall pay Lender the Funds for Escrow Items unless Lender waives the obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. The obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to

Lender all Funds, and in such amounts, that are then required under this section.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the

Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender may only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of the property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan if required and this Agreement by Lender to (a) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (b) companies that perform support services for the Loan Modification Agreement; and (c) any HUD certified housing counselor.

N. I agree, that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this section shall be referred to as "Documents." I agree to deliver the Documents within fifteen (15) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P. CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this modification, hereby grants Wells Fargo Home Mortgage, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 180 days from the closing date of the undersigned's modification, or the date any and all documents that the lender requires to be recorded have been successfully recorded at the appropriate office, whichever is later. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by

Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

Q. Borrower must deliver to Wells Fargo Home Mortgage a properly signed Modification Agreement by **MARCH 24, 2023**. If Borrower does not return a properly signed Modification Agreement by this date and make all payments pursuant to the trial plan agreement or any other required pre-modification payments, Wells Fargo Home Mortgage may deny or cancel the modification. If Borrower returns the properly signed Modification Agreement by said date, payments pursuant to the loan Modification Agreement are due as outlined in this Modification Agreement. Wells Fargo Home Mortgage may deny or cancel this loan Modification Agreement if Borrower fails to make the first payment due pursuant to this loan Modification Agreement.

R. **Pursuant to Section 199.145(4)(b), Florida Statutes, additional nonrecurring intangible tax is due. This Mortgage is given in connection with the refinancing of an obligation secured by an existing mortgage, recorded in Official Records INSTRUMENT NO. 2018020184 BOOK 2470 PAGE 2807, Public Records of YORK COUNTY, Florida from the Mortgagor hereunder to the Mortgagee hereunder, or to the assignor of the Mortgagee hereunder. As of the date of refinancing, the unpaid principal balance of the original obligation, plus accrued but unpaid interest, secured by the existing mortgage is equal to U.S. $137,611.86. The principal balance of the new obligation secured by this Mortgage is U.S. $143,930.09, which amount represents, as of the refinancing, the excess of the unpaid principal balance of the original obligation, plus accrued but unpaid interest. Notwithstanding anything to the contrary contained in the foregoing, if the obligor under the new obligation is not liable to the obligee under the obligation secured by this Mortgage, then the additional nonrecurring intangible tax shall be computed on the entire principal balance of the new obligation.**

S. **This Agreement modifies an obligation secured by an existing security instrument recorded in YORK County, PENNSYLVANIA, upon which all recordation taxes have been paid. As of the date of this Agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $137,611.86. The principal balance secured by the existing security instrument as a result of this Agreement is $143,930.09, which amount represents the excess of the unpaid principal balance of this original obligation.**

**All Borrowers are required to sign and date this Agreement in blue or black ink only as the Borrowers' name appears below. If signed using any other color or method, the document may not be accepted and another copy of the Agreement may be sent to the**

Wells Fargo Custom Loan Modification Agreement 10092022_448

Page 11

**Borrower to be signed.**

By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.

In Witness Whereof, I have executed this Agreement.

_____  3/24/23
Borrower: **KRISTIN R. RUHLMAN**          Date

## BORROWER ACKNOWLEDGMENT

STATE OF _Pennsylvania_

COUNTY OF _York_

On this, the _24th_ day of _March_, _2023_, before me _Vicki M. Runkle_, the undersigned officer, personally appeared **KRISTIN R. RUHLMAN**, known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal

_____
Notary Public

Printed Name: _Vicki M. Runkle_

My commission expires: _01/14/2024_

Commonwealth of Pennsylvania - Notary Seal
VICKI M RUNKLE - Notary Public
York County
My Commission Expires Jan 14, 2024
Commission Number 1204008

In Witness Whereof, the Lender has executed this Agreement.

**WELLS FARGO BANK, N.A.**

_____     _____     _____
By                                  (print name)              Date
                                    (title)

_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

**STATE OF** _____

**COUNTY OF** _____

This instrument was acknowledged before me

_____(date) by _____

(name(s) of person(s)) as _____ (type of authority, e.g., officer, trustee, etc.) of **WELLS FARGO BANK, N.A.** (name of party on behalf of whom the instrument was executed).


_____
Notary Public


Printed Name: _____

My Commission Expires:

_____


Wells Fargo Custom Loan Modification Agreement 10092022_448

Page 14

# EXHIBIT A

BORROWER(S): KRISTIN R. RUHLMAN

LOAN NUMBER: (scan barcode)

LEGAL DESCRIPTION:

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE TOWNSHIP OF WEST MANCHESTER, COUNTY OF YORK AND STATE OF PENNSYLVANIA, AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTH SIDE OF BANNISTER STREET, 120 FEET EAST OF THE SOUTHEAST CORNER OF HIGHLAND AVENUE AND BANNISTER STREET AND EXTENDING THENCE EASTWARDLY, ALONG BANNISTER STREET, 60 FEET MORE OR LESS, TO A POINT AT THE PROPERTY OF GEORGE M. AND EDNA M. SUNDAY, THENCE SOUTHWARDLY, ALONG SAID MORE OR LESS, TO A POINT ON THE NORTH SIDE OF A 20 FEET WIDE ALLEY; THENCE WESTWARDLY ALONG SAID ALLEY 60 FEET, MORE OR LESS TO A POINT AT THE PROPERTY OF JOHN KUNKLE; THENCE NORTHWARDLY ALONG SAID PROPERTY OF JOHN KUNKLE, 110 FEET, MORE OR LESS, TO A POINT ON BANNISTER STREET AND THE PLACE OF BEGINNING. THIS PROPERTY OR PARCEL OF LAND CONSISTING OF THREE LOTS KNOWN AS "MUSSER ADDITION" SURVEYED BY S.S. ALDINGER, SURVEYOR, FEBRUARY 27, 1906.

ALSO KNOWN AS: 1322 BANNISTER STREET, YORK, PENNSYLVANIA 17404

# CERTIFICATE OF RESIDENCE

## TITLE OF DOCUMENT
LOAN MODIFICATION AGREEMENT (MORTGAGE)

## BETWEEN:
KRISTIN R. RUHLMAN (assignor/Mortgagor/grantor)

## AND:
WELLS FARGO BANK, N.A. (assignee/Mortgagee/grantee)

I do hereby certify that the precise address of the within named Mortgagee is:
**WELLS FARGO BANK, N.A.**
**1 HOME CAMPUS**
**DES MOINES, IA 50328**

*By:* _____

*Print Name:* _____

*Title:* _____